# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

| | |
|---|---|
| LEILA SIMON,<br>      Plaintiff<br><br>UNUM LIFE INSURANCE<br>COMPANY OF AMERICA AND<br>HARVARD YARD CHILD CARE<br>CENTER GROUP SHORT AND<br>LONG TERM DISABILITY PLAN<br>      Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MAGISTRATE JUDGE _Collings_

**COMPLAINT**

RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED____2____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE____3-2-04____

## INTRODUCTION

1.   Plaintiff, Leila Simon ("Ms. Simon"), brings this action against Defendants, Unum Life Insurance Company of America ("Unum") and Harvard Yard Child Care Center Group Short and Long Term Disability Plan ("Plan") (collectively referred to as "Defendants") for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Ms. Simon is a participant in an ERISA welfare benefit plan that is underwritten and insured by Unum. The name of the welfare benefit plan is the Harvard Yard Child Care Group Short and Long Term Disability Plan. The Plan number is 104249 001.

2.   This Complaint challenges: (1) the Defendants unlawful termination of Ms. Simon's Short Term Disability ("STD") and Long Term Disability ("LTD") total disability benefits without appropriate justification and without granting her a full and fair review of her

1

claim for benefits; (2) Unum's pattern of rejecting and/or ignoring the opinions of Ms.

Simon's treating and examining physicians in at attempt to deprive her of the appropriate

STD and LTD benefits she is due; and (3) Unum's failure to provide a reasonable claims

procedure that would yield a decision on the merits of Ms. Simon's claim.

3.    Ms. Simon is filing this action to recover benefits due under the Plan, to enforce the

present rights existing therein, to clarify rights under the terms of the Plan, and to recover

costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4.    This court has personal and subject matter jurisdiction over this case under 29 U.S.C. §

1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in

that the Plan is administered in this district.

## PARTIES

5.    Ms. Simon is a 27 year old woman who currently resides in Watertown, Massachusetts.

Ms. Simon is a vested participant in a Unum employee benefit plan, within the meaning

of 29 U.S.C. § 1002(2)(7).  Ms. Simon has standing to bring this action under 29 U.S.C. §

1132(a).

6.    The defendant, Unum Life Insurance Company of America, is a for-profit corporation

with its principal place of business at 2211 Congress Street, Portland, Maine.  Unum

transacts business in Massachusetts and underwrites the Plan under which Ms. Simon is

suing.  Unum is the party responsible for processing the claims made under the Plan and

making a final determination as to Plan participants' eligibility for LTD benefits.

7.    At all times relevant to the claims asserted in this Complaint, Unum purported to act as an

ERISA claims fiduciary with respect to participants of the plan, generally, and specifically, with respect to Ms. Simon, within the meaning of ERISA.

8.    The Plan under which Ms. Simon is suing is a "long term disability plan" issued by Unum to Harvard Yard Child Care Center, a Massachusetts company with its principal place of business in Massachusetts. The Plan number is 104249 001.

## STATEMENT OF FACTS

### Insurance Entitlement, Definitions of Disability, Discretion

9.    At the time she became disabled, Ms. Simon was an employee at Harvard Yard Child Care Center ("Harvard").

10.    As an employee of Harvard, Ms. Simon was provided with STD and LTD benefits under a contract of insurance between Harvard and Unum.

11.    Unum both funds and administers the Plan under which Ms. Simon is suing.

12.    Under the terms of the Plan, Ms. Simon is entitled to receive STD benefits in the amount of 60% of her monthly earnings to a maximum benefit of $500 per week.

13.    Under the terms of the Plan, Ms. Simon is entitled to receive 60% of her monthly earnings to a maximum benefit of $2,000 a month until she turns 65 years old.

14.    Under the terms of the STD Plan, "disability" is defined as follows:

You are disabled when UNUM determines that due to your **sickness** or **injury**:

–    you are unable to perform the **material and substantial duties** of your **regular occupation**; and

–    you are not working in any occupation. (Emphasis in original.)

15.    Under the terms of the LTD portion of the Plan, "disability" is defined as follows:

3

### *HOW DOES UNUM DEFINE DISABILITY?*

You are disabled when UNUM determines that:

- you are limited from performing the **material and substantial duties** of your **regular occupation** due to your **sickness or injury**; and

- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

You will continue to receive payments beyond 24 months if you are also:

- working in any occupation and continue to have a 20% or more loss in your **indexed monthly earnings** due to your sickness or injury; or

- not working and, due to the same sickness or injury, are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

14. Material and substantial duties means duties are defined under the terms of the Plan as follows:

   - are normally required for the performance of your regular occupation; and

   - cannot be reasonably omitted or modified.

15. At the time she became disabled, Ms. Simon's occupation was that of a Preschool Teacher at Harvard.

15. Regular occupation is defined under the Plan as the occupation you are routinely performing when your disability begins.

## Ms. Simon's Claim For STD and LTD Benefits

16. Ms. Simon has presented a timely claim to Unum, asserting that she is an insured person, that she became disabled while insured, and that she is entitled under the Plan to STD and LTD benefits for the period of time beginning on August 6, 2002, when Unum

4

wrongfully terminated her benefits, and continuing thereafter without interruption through to the present, and continuing in the future until she reaches the age of 65 or is no longer disabled.

## Job Description

17.    At the time the onset of her symptoms and disability, Ms. Simon was working as a Preschool Teacher at Harvard.

18.    Ms. Simon's duties as a Preschool teacher at Harvard included, but were not limited to, supervising and guiding young children through preschool learning activity and appropriate educational play, maintaining classroom safety, completing paperwork on students' progress, attending staff meetings, and the setting up and cleaning of classrooms.

19.    The physical demands of Ms. Simon's position included, but were not limited to, lifting young children between 15 and 45 pounds, assisting with diapering, playing, dancing, reading, jumping, running, walking and standing.

20.    Ms. Simon worked on average of 37 hours per week.

## Illness/Basis for Disability

21.    In or about June 2002, Ms. Simon began to experience insomnia, fatigue, general neck pain, general body aches and a heightened sense of smell.

22.    On July 12, 2002, Dr. Osman Cay, from the Cambridge Health Alliance, diagnosed Ms. Simon with degenerative bone disease in her neck.

23.    Upon injuring her neck in July 2002, Ms. Simon was forced to call in sick for work. Ms. Simon remained out of work until late August 2002, when she returned to part-time work

at Harvard.

24. In late July 2002, Dr. Paul Romain, a Rheumatologist, from the Cambridge Health Alliance, diagnosed Ms. Simon with Fibromyalgia and Chronic Fatigue Syndrome.

25. In late August 2002, although Ms. Simon's symptoms were still present, Ms. Simon attempted to return to work on a part-time basis, with accommodations.

26. On August 29, 2002, Dr. Camilla Parnham, Ms. Simon's Primary Care Physician, from the Marino Center, diagnosed Ms. Simon with Multiple Chemical Sensitivity Syndrome.

27. In late September 2002, Ms. Simon's symptoms drastically worsened. Ms. Simon began experiencing increased neck pain, increased fatigue, increased sensitivity, increased malaise, and increased body aches and pains.

28. As a result of the progression of her symptoms, and her inability to continue working even part-time with accommodations, Ms. Simon ceased working part-time on October 2, 2002.

29. As a result of the symptoms from her combined illnesses, Ms. Simon was often unable to leave the house without experiencing allergic reactions, impaired cognition, or breathing difficulties. In addition, Ms. Simon also suffered from increased fatigue, increased neck and body aches and pains and insomnia.

30. Since October 2002, Ms. Simon has not worked for Harvard in any capacity.

## Ms. Simon's Application For Disability Benefits

31. In or about July 2002, Ms. Simon applied for STD benefits under her Plan.

32. On August 2, 2002, Terry Serappa a Customer Care Specialist at Unum, wrote Ms. Simon approving her STD benefits from July 12, 2002 through August 6, 2002.

33.    On or about August 26, 2002, Ms. Simon returned to part-time work at Harvard.

34.    In or about October 2, 2002, Ms. Simon ceased part-time work as a result of her total disability.

35.    In early October 2002, Ms. Simon applied for LTD benefits under her Plan.

## Unum's Internal Review of Ms. Cusanelli's Claim for LTD Benefits

36.    On November 5, 2002, Paul Lyons, Disability Benefit Specialist at Unum, wrote Ms. Simon indicating that "your [Ms. Simon's] Short Term Disability claim was submitted to us in error.  Based on the fact that you returned to part-time work on 8/26/02, your file will be referred for Long Term Disability consideration as of July 12, 2002."

37.    On November 8, 2002, Mr. Lyons wrote Ms. Simon indicating that Unum required additional information from Ms. Simon in an effort to determine whether Ms. Simon's condition was pre-existing under the terms of the Plan.

## Unum's Initial Denial Of Ms. Simon's Claim

38.    On December 6, 2002, Mr. Lyons wrote Ms. Simon indicating that Unum had denied her claim for LTD benefits on the basis that she was not totally disabled from performing the material and substantial duties of her regular occupation.

## Ms. Simon's Appeal of Unum's Denial of Her Claim

39.    On June 12, 2003, Ms. Simon appealed Unum's denial of her STD benefits.  Ms. Simon's appeal included in relevant part, numerous narratives supporting her total disability from three of her treating and examining physicians, affidavits, medical records and medical literature, for Unum's consideration.

**Final Denial**

40. On September 10, 2003, Unum issued a final denial of Ms. Simon's claim for LTD benefits.

41. The September 10, 2003 denial constituted Unum's final denial pursuant to the terms of the Plan.

42. Unum's September 10, 2003 denial was based solely upon a records review of Ms. Simon's claim conducted by William J. Hall, M.D.

43. Despite the complexity of Ms. Simon's condition, at no time during its administrative review of Ms. Simon's claim did Unum seek independent verification of its determination that Ms. Simon was not disabled, nor did it request an independent medical examination of Ms. Simon as is its right under the terms of the Plan.

44. At no time during its administrative review of Ms. Simon's claim did Unum call Ms. Simon's treating physicians to discuss the nature and extent of Ms. Simon's illness and disability.

45. Unum failed to meet its burden of establishing that Ms. Simon's condition had changed to such a degree that she was no longer disabled under the terms of the Plan, when it terminated her benefits effective August 8, 2002.

46. The self-serving nature of Unum's decision that Ms. Simon is no longer disabled is illuminated by the fact that Ms. Simon's condition has not changed such that she is able to return to her regular occupation, or any occupation, since Unum first accepted liability on her claim for benefits.

47. Unum's failure to provide a full and fair review of Ms. Simon's claim for benefits is

exemplified in its failure to conduct a vocational review of Ms. Simon's occupation.

48.  Unum failed to provide Ms. Simon a full and fair review of her claim for LTD benefits.

49.  The decision to deny Ms. Simon's benefits was wrongful, unreasonable, irrational, solely

contrary to the evidence, contrary to the substantial evidence contained in the file,

contrary to the terms of the Plan and contrary to law.

50.  Unum was influenced by its financial conflict of interest, as both the administrator of the

plan and the payor of benefits thereunder, when it terminated Ms. Simon's benefits.

51.  Unum is not entitled to deferential review as a result of its financial conflict of interest as

well as the procedural anomalies contained in its review of Ms. Simon's claim.

52.  Due to the unlawful denial of benefits under ERISA, Ms. Simon has lost her rightful

long-term disability benefits.  She has also suffered emotional distress and humiliation as

a result of Unum's actions.

53.  Due to the unlawful denial of benefits under ERISA, Ms. Simon has also lost the use of

her STD and LTD benefits.

54.  Having exhausted the administrative procedures provided by Unum, Ms. Simon now

brings this action.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for Unpaid Benefits)**
**(ALL DEFENDANTS)**

55.  Ms. Simon realleges each of the paragraphs above as if fully set forth herein.

56.  The Plan is a contract.

57.  Ms. Simon has performed all of her obligations under the contract.

9

58.   29 U.S.C. § 1132(a)(1)(B) states that:

      A civil action may be brought ---

            (1) by a participant or beneficiary –

                  (A) for the relief provided for in subsection (c) of this section, or

                  (B) to recover benefits due to him under the terms of his plan, to enforce his

                        rights under the terms of the plan, or to clarify his rights to future benefits

                        under the terms of the plan.

59.   The Defendants' actions constitute an unlawful denial of benefits under ERISA, as

      provided in 29 U.S.C. § 1132(a)(1)(B).

60.   The Defendants unlawfully denied Ms. Simon's benefits in part by: (1) rejecting the

      substantial medical and vocational evidence supporting Ms. Simon's claim for benefits;

      and (2) denying Ms. Simon a full and fair review of their decision to deny her benefits.

61.   In accordance with 29 U.S.C. §1132, Ms. Simon is entitled to be paid benefits under the

      Plan based upon her disabled status from and after August 2002, and continuing into the

      present.

62.   The Defendants have refused to provide Ms. Simon with these disability benefits and are,

      therefore, in breach of the terms of the Plan and ERISA, which requires that the

      Defendants engage in a full and fair review of all claims and the administration of the

      Plan in the best interests of the Plan participants.

63.   As a direct and proximate result of this breach, Ms. Simon has lost the principal and the

      use of her rightful LTD benefits.

## SECOND CAUSE OF ACTION
### (Attorneys' Fees and Costs)
### (ALL DEFENDANTS)

64.  Ms. Simon realleges each of the paragraphs above as if fully set forth herein.

65.  Under the standards applicable to ERISA, Ms. Simon deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

66.  The Defendants have the ability to satisfy the award.

67.  Ms. Simon's conduct of this action is in the interests of all participants suffering from physical conditions who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

68.  The Defendants have acted in bad faith in denying Ms. Simon's benefits under the Plan.

69.  The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1)  Declare, adjudge and decree that Ms. Simon is entitled to STD and ongoing LTD benefits as calculated under the terms of the Plan.

(2)  Award Ms. Simon the full amount of unpaid benefits under the Plan to which she is entitled, together with such pre-judgment interest as may be allowed by law.

(3)  Order that the Defendants make restitution to Ms. Simon in the amount of any losses sustained by Ms. Simon in consequence of the wrongful conduct alleged herein, together with prejudgment interest.

11

(4)    Award Ms. Simon the costs of this action and reasonable attorneys' fees; and

(5)    Award such other relief as the court deems just and reasonable.

Date: March  2 , 2004                          Respectfully submitted,

                                        By:    _____
                                               Mala M. Rafik
                                               BBO No. 638075
                                               ROSENFELD & RAFIK, P.C.
                                               44 School Street, Suite 410
                                               Boston, MA 02108
                                               617-723-7470

12